Eyster's Estate.

Letters of administration *cum testamento annexo* can only be granted by the register of the county where the will was proved and letters testamentary granted.

APPEAL from the decree of the register's court of *York* county, confirming the decree of the register granting letters of administration to Andrew Flickinger, with the will of Daniel Eyster deceased.

On the 13th of September 1798, Daniel Eyster, the testator, died at his residence on a farm situate in            township, Adams county, then a part of York county.

On the 17th of September 1798, a *caveat* was entered against the probate of his will.

On the 4th of October 1798, the register of York county directed an issue of *devisavit vel non*, to the court of common pleas, and granted letters of administration of the estate of decedent, *pendente lite.*

On the 22d of January 1800, the act of assembly was passed by which Adams county was formed out of part of York county.

The said issue was transferred to the circuit court of York county,

[Eyster's Estate.]

where, on the 23d of April 1803, a jury established certain papers as the will of decedent: the verdict and proceedings of the circuit court were recorded by the register of York county, and on the 2d day of November 1807, he issued letters testamentary thereon to Elizabeth Eyster, surviving executrix, to whom the whole estate was given for life, by the will, which also directs the lands to be sold if not accepted by his sons.

On the 27th day of August 1835, the death of said executrix being suggested to the register of York county, he granted letters of administration with the will of D. Eyster annexed, to Andrew Flickinger, the lands of testator being not yet disposed of. An appeal was taken to the register's court where these letters were confirmed, and now, by an appeal from that decree, the matter is brought to the supreme court.

It is alleged for error, that the register of York county had no authority to grant letters of administration on this estate to A. Flickinger at the time he did.

*Evans,* for appellant, cited 4 *Dall. L.* 532, 533, *sect.* 4; *Act of the* 15*th of March* 1832, *sect.* 5, *Pamph. L.* 135; 1 *Cranch* 259.

*Barnitz,* contra, stopped by the court.

The opinion of the Court was delivered by

GIBSON, C. J.—In England the administration of a decedent's effects belongs to the chief executive magistrate as the *parens patriæ;* and derivatively to the archbishops and diocesans deputed by him, with jurisdiction restricted respectively to the province or diocess, and determinable by the *situs* of the assets. The existence of *bona notabilia* in more than one diocess, requires administration to be granted by the archbishop as the common ecclesiastical superior of the diocesans, and when in each of the two archiepiscopal provinces, it requires a separate administration in each. So stood the English law in 1705, when the legislature, in fulfilment of the fourth section of the charter to William Penn, directed the governor to appoint a register-general, with an office fixed in Philadelphia, and direction to constitute a deputy with the like powers in each county. This pretty close imitation of the English plan continued in use, with few alterations or additions, till March 1777, when, in accordance with the thirty-fourth section of the constitution of the preceding year (repeated article five, section eleven of the present constitution) the legislature abolished the office of register-general, and directed a register to be appointed in each county, to be subordinate to no other of the class; and so stands the matter at the present day. The jurisdiction of this officer is, of course, restricted to the county; but as only one administration is grantable any where, the authority derived from his power extends, by necessary consequence, over the state. The principal departure from the English system, observable

[Eyster's Estate.]

in this, is that the question of jurisdiction is determinable, in the case of an inhabitant, by the domicil; and in the case of a stranger, by the *situs* of the assets. But the jurisdiction, when determined, is exclusive; and the administration granted by virtue of it, is entire. An administration *de bonis non*, is but a continuance of the original administration by another hand, and under a separate responsibility, but by the same authority. All acts done by virtue of it, and all accounts rendered of them, are parts of a whole. Administration once begun, is therefore essentially local and exclusive in its progress and completion. It is peculiarly so where it is to be pursuant to a will, which enters, as a constituent part, into the letters testamentary for direction of the administrator. The officer who has jurisdiction of probate, must necessarily have exclusive jurisdiction of granting administration in order to control the exercise of it while the question of probate may be depending. Even where the existence of a will is not pretended, the statutory inhibition of separate administration in different counties, might be evaded if it were grantable any where but in a definite place. The domicil of the testator here, was in York county; and it is immaterial that the subsequent erection of Adams out of a part of York, has changed the political relations of the spot. The act which erected Adams, has no provision specially applicable to the case; and the administration of the will having been begun in the parent county, must be completed there. The grant was therefore proper.

Decree affirmed.